# EXHIBIT "C-2"

FILED
TARRANT COUNTY
12/23/2020 9:04 PM
THOMAS A. WILDER
DISTRICT CLERK

CAUSE NO. 017-322421-20

| | | |
|---|---|---|
| TROY MITCHELL, Individually, and on Behalf of the ESTATE OF EMMA MITCHELL, <br> *Plaintiffs*, <br><br> v. <br><br> ADVANCED HCS, LLC d/b/a WEDGEWOOD NURSING HOME; WEDGEWOOD REHAB & NURSING GS, LLC; TOM GS, LLC, <br> *Defendants*. | § § § § § § § § § § § § § § | IN THE ____ JUDICIAL DISTRCT <br><br><br><br> COURT OF <br><br><br><br><br> TARRANT COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

1. Plaintiffs, TROY MITCHELL, Individually, and on Behalf of the ESTATE OF EMMA MITCHELL, hereby brings this cause of action against ADVANCED HCS, LLC d/b/a WEDGEWOOD NURSING HOME; WEDGEWOOD REHAB & NURSING GS, LLC; and TOM GS, LLC, hereinafter referred to collectively as "Defendants."

### A. DISCOVERY CONTROL PLAN

2. Plaintiffs intend to conduct discovery under Level 3 of Texas Rule Of Civil Procedure 190.4.

### B. PARTIES

3. Plaintiff, MARIA RODIRGUEZ, is an individual and at all relevant times was a resident of Texas. Plaintiff brings this suit Individually and on Behalf of the Estate of EMMA MITCHELL. TROY MITCHELL is the son of EMMA MITCHELL and was named executor in her will.

4. At the time of EMMA MITCHELL'S injuries, she was a resident of Tarrant County, Texas.

5. Defendant ADVANCED HCS, LLC, may be served with process through its registered agent, Interstate Agent Services, LLC, 12830 Hillcrest Road, Ste. 111, Dallas, Texas 75230. Defendant owned, managed, operated, supervised and/or staffed the rehabilitation center at which EMMA MITCHELL was a resident in 2020.

6. Defendant WEDGEWOOD REHAB & NURSING GS, LLC, is a domestic limited liability company and may be served with process through its registered agent, Interstate Agent Services, LLC, 12830 Hillcrest Road, Ste. 111, Dallas, Texas 75230. Defendant owned, managed, operated, supervised and/or staffed the rehabilitation center at which EMMA MITCHELL was a resident in 2020.

7. Defendant TOM GS, LLC, is a domestic limited liability company and may be served with process through its registered agent, Interstate Agent Services, LLC, 12830 Hillcrest Road, Ste. 111, Dallas, Texas 75230. Defendant owned, managed, operated, supervised and/or staffed the rehabilitation center at which EMMA MITCHELL was a resident in 2020.

8. To the extent that the above-named Defendants are conducting business pursuant to a trade name or assumed name, then suit is brought against it pursuant to the terms of Rule 28 of the Texas Rules of Civil Procedure and Plaintiff hereby demands that upon answering this suit, that they answer in their correct legal name and assumed name.

## C. JURISDICTION AND VENUE

9. Plaintiffs affirmatively plead that this Court has jurisdiction because the damages sought are in excess of the minimum jurisdictional limits of the Court. Furthermore, all of the causes of action asserted in this case arose in the State of Texas, and all of the parties to this action are either residents of the State of Texas or conduct business in this State and committed the torts that are the subject of this suit in whole or in part in Texas, as hereafter

alleged in more detail. Therefore, this Court has both subject matter and personal jurisdiction over all of the parties and all of the claims.

10. Pursuant to Section 15.002(a) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE (CPRC), venue is proper in Tarrant County because Defendants conducted business in Tarrant County at all relevant times and all or a substantial part of the events or omissions giving rise to the claim occurred in Tarrant County, Texas and no mandatory venue provision applies.

11. At all times, the Plaintiff was treated by the Defendants in Medina Tarrant County, Texas.

### D. FACTS

12. In approximately March 2020, EMMA MITCHELL was a resident at WEDGEWOOD NURSING HOME ("WEDGEWOOD") at all relevant times as alleged herein. At all relevant times, WEDGEWOOD provided caregivers and related services to assist EMMA MITCHELL with her activities of daily living. WEDGEWOOD was managed, operated, supervised and/or staffed by Defendants ADVANCED HCS, LLC d/b/a WEDGEWOOD NURSING HOME; WEDGEWOOD REHAB & NURSING GS, LLC; and TOM GS, LLC.

13. At the time she resided at WEDGEWOOD, EMMA MITCHELL suffered from the following co-morbidities: dementia, high cholesterol and heart issues.

14. Defendant WEDGEWOOD knew of the existence of these comorbidities, knew of the increased risk and susceptibility to viruses created by these conditions, and represented to Plaintiffs that it was able, knowledgeable, and sufficiently staffed to adequately care for EMMA MITCHELL's conditions. Plaintiffs relied on this representation in selecting Defendants as health care providers to care for EMMA MITCHELL.

15. Defendants formulated and/or were required to formulate various Focus Plans (Care Plans) to account for EMMA MITCHELL's specifically identified conditions and potential complications related to her conditions.

16. Further, knowing that EMMA MITCHELL would need special care and assistance in her activities of daily living, WEDGEWOOD admitted EMMA MITCHELL into its Facility and under its care, and further represented to the Plaintiffs and indicated that Defendant's facility and services were equipped to meet her needs. Plaintiffs relied on Defendant's representation when choosing a facility and health service to assist with EMMA MITCHELL's activities of daily living and provide appropriate care based upon her conditions.

17. Defendants WEDGEWOOD provided what Plaintiffs believed and understood was skilled nursing care and ongoing assessments of EMMA MITCHELL. It was further Plaintiffs' belief and understanding that Defendants were providing proper medical oversight and care through properly trained and qualified individuals to assure that EMMA MITCHELL was safe and properly cared for at all relevant times.

18. Despite these representations, Defendant failed to properly monitor and care for EMMA MITCHELL, which ultimately led to her exposure to COVID-19 and her contracting COVID-19 and pneumonia.

19. Upon admission to WEDGEWOOD, EMMA MITCHELL was ambulatory but soon after she became non-ambulatory.

20. EMMA MITCHELL suffered several bouts of respiratory issues. She was transferred to Texas Harris Methodist Hospital Fort Worth, where she was diagnosed with pneumonia and she tested positive for COVID-19.

21. EMMA MITCHELL was placed on a ventilator and she passed away on May 8, 2020. Her death certificate listed the causes of death as pneumonia, heart disease and complications from COVID-19.

22. During EMMA MITCHELL's treatment by WEDGEWOOD, Plaintiffs relied on Defendants' representations and it was their belief and understanding that EMMA MITCHELL was being properly cared for by all Defendants at all times. However, based upon Defendants' negligence and other tortious misconduct as alleged herein, Plaintiff suffered substantial injury and damages including EMMA MITCHELL's pain and suffering and death.

### E. MEDICAL NEGLIGENCE

23. Defendants are health-care providers licensed by the State of Texas to provide health care.

24. The subject injuries caused by the tortious misconduct of Defendants, and each of them, occurred while Defendants' agents were within the regular scope of their employment by Defendants, and under the doctrine of *respondeat superior*, Defendants may be held liable for the negligent acts of its agents/employees committed during the regular course and scope of their agency/employment even if the employer did not personally commit a wrong.

25. Defendants owed EMMA MITCHELL a duty of care to exercise that degree of care required by the Plaintiff's known physical conditions, which duty of care these Defendants breached by the acts and omissions of negligence of Defendants and their agents, employees and representatives, including the following:

   a. Failing to institute an infection control program;

   b. Failing to implement an infection control program;

  c. Failing to observe, intervene, and care for EMMA MITCHELL;

  d. Neglecting EMMA MITCHELL to such a degree that she was exposed to COVID-19 and suffered pneumonia;

  e. Failing to provide the medical and nursing care reasonably required for the Plaintiff's known conditions.

  f. Failing to provide the appropriate supervision and training to its staff and personnel that were providing care to the Plaintiff including appropriate care related to EMMA MITCHELL' treatment needs at all relevant times.

26. Defendants further violated applicable Federal and State statutes that were enacted to protect the class of individuals, like EMMA MITCHELL, who reside in nursing facilities by, among other acts and omissions, failing to:

  a. Failed to implement an infection control plan; TEX. HEALTH. & SAF. CODE § 242.403(a)(6) and 40 TAC § 19.1601.

  b. Admitting or retaining a resident whose needs could not be met by the facility; 40 TAC § 19.1921.

  c. Failed to ensure that EMMA MITCHELL received and that the facility provided *the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being of* EMMA MITCHELL; 40 TAC § 19.901.

  d. Failed to maintain staffing so as to ensure that each resident receives the kind and amount of supervision and care required to meet her basic needs; 40 TAC §§ 19.1001, 19.1002

    e.    Ensure that the individuals service plan or care plan be properly updated upon a significant change in condition, based upon an assessment of the resident; 40 TAC § 19.802.

    f.    Failed to maintain clinical records in accordance with accepted professional health information management standards and practices which are complete, accurately documented and readily accessible; 40 TAC § 19.1910.

    g.    Failed to promulgate written policies and procedures; TEX. HEALTH. & SAF. CODE § 242.404(a).

    h.    Failed to follow written policies and procedures; 40 TEX. ADMIN. CODE §§ 19.1010, .1902, .1917, .1920, .1922.

27. Based upon Defendants' failure to meet the standard of care as described herein, Plaintiffs would show that Defendants' negligence and otherwise tortious conduct was a proximate cause of damages suffered by the Plaintiffs and EMMA MITCHELL as alleged herein.

## F. CORPORATE NEGLIGENCE

28. Plaintiffs hereby incorporate and reallege the matters set forth in the preceding paragraphs as if set forth at length.

29. At all relevant times, Defendants jointly and singularly owed Decedent a legal duty to provide the same level of medical care that a reasonable, prudent, similar business that owns, operates, manages, and/or controls a skilled nursing facility would have provided under the same or similar circumstances, including but not limited to exercising that degree of care required by Decedent's known physical and mental condition.

30. Defendants were required to ensure that their respective medical facilities had sufficient trained medical and nursing staff to provide the necessary medical treatment, monitoring,

and supervision of all residents, including Decedent. Defendants had an obligation to sufficiently staff their respective medical facilities to ensure that each of their residents received the necessary care and services for them to attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with the resident's comprehensive assessment and plan of care. This included Decedent. This obligation required Defendants to sufficiently staff their respective medical facilities based not only upon the number of residents residing in each facility, but also on the medical needs of those residents.

31. In addition, Defendants were required to properly capitalize the medical facility to ensure that the required medical and nurse staffing, medical treatment, monitoring, and supervision of all residents, including EMMA MITCHELL, was provided.

32. Through Defendants' management and operational control of WEDGEWOOD, Defendant engaged in numerous acts that affected resident medical care in the facility, including but not limited to (i) creating, setting, funding and/or implementing budgets; (ii) monitoring resident acuity levels; (iii) setting and monitoring staffing levels of nursing and medical staff; (iv) controlling resident admissions and discharges; and (v) controlling the number of hours of direct care provided to residents of the facility by licensed nurses and Certified Nursing Aides (hereinafter "CNAs") employed by Defendants. Each of these managerial and operational functions had a direct impact on the quality of care delivered to Decedent at each facility and were taken in furtherance of operational and managerial objectives.

33. In addition, based on information and belief, Defendants substantially derived their revenue and profits through their operation of their medical facility from the receipt of taxpayer funds through federal and state funded Medicare and Medicaid programs. The rate at which

a skilled nursing facility is compensated by Medicare for the delivery of skilled nursing care and services is normally based upon the "acuity" level of the residents in the facilities. "Acuity" is a term commonly used by healthcare providers and can be defined as the measurement of the intensity of nursing care required by a resident. Residents with higher acuity levels place higher demands for care and services on the skilled nursing facility and its staff, and therefore, the care provided to these residences is compensated at higher levels.

34. Acuity levels are reflected in the resident's Resource Utilization Group score ("RUG") of the resident. RUG scores are contained in section Z of each resident's Minimum Data Set (hereinafter "MDS"). An MDS is required to be completed by every nursing home for every resident in a skilled nursing facility regardless of their payor status.

35. The Centers for Medicare and Medicaid Services (hereinafter "CMS") is the federal agency tasked with regulating all skilled nursing facilities in this country. Through the years, CMS has sponsored multiple studies to determine the amount of time that skilled nursing facility staff spent caring for residents, as well as other elements of resident care. As a consequence of these studies, CMS is able to set a number of hours of direct care that is expected to be provided to residents by licensed nurses and CNAs based on the skilled nursing facility's total acuity level. This expectation is expressed in terms of "hours per patient day" or "HPPD."

36. Based on information and belief, Defendants engaged in a systematic process of ensuring that their medical facility maintained the highest acuity levels possible while at the same time providing insufficient capitalization and staff to meet the individual needs of their residents during the time that EMMA MITCHELL was a resident in the facility. This

purposeful undercapitalization and understaffing directly resulted in the failure of their facility to provide the necessary and basic services that EMMA MITCHELL needed to prevent him from sustaining the injuries pleaded herein.

37. Defendants further breached their duty of care to Decedent by engaging in numerous improper acts and omissions constituting corporate negligence and ratification of corporate negligence, including but not limited to the following:

   a. Failing to ensure that appropriate levels of medical and nursing staff were maintained in their facility to provide necessary medical care, monitoring, and supervision of residents, including EMMA MITCHELL;

   b. Staffing the facility below what was necessary to properly care for each of the facility's resident's needs, including those of EMMA MITCHELL, based on the acuity level of all residents in each facility, including EMMA MITCHELL;

   c. Failing to provide sufficient training and follow-up review of medical and nursing staff to ensure that the medical and nursing staff had the necessary training to provide the required medical care, monitoring, and supervision of residents, including EMMA MITCHELL;

   d. Failing to ensure that sufficient funds were budgeted and expended on staff, training of staff, medical supplies, and medical care and treatment for EMMA MITCHELL; and

   e. Failing to properly capitalize the facility to ensure that the required medical treatment, monitoring, and supervision of all residents, including EMMA MITCHELL, was provided.

38. As outlined above, Defendants failed to meet the applicable standards of care that Defendants owed to EMMA MITCHELL, and this failure was a proximate cause of severe damages suffered by EMMA MITCHELL.

### G. GROSS NEGLIGENCE

39. The above cited acts and/or omissions by Defendants directly and through their agents, representatives and employees, detailed above, amount to gross negligence because when viewed objectively from Defendants' standpoint at the time in question, such acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm, of which Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference and/or malice with regard to the rights, safety, or welfare of others.

40. Defendants had direct prior notice of EMMA MITCHELL's high risk for infectious diseases yet failed to take any reasonable action to prevent the foreseeable events as alleged herein.

41. The acts and omissions of gross negligence attributed to the Defendant were committed and/or ratified by vice principals of and/or manages acting in managerial capacity. By reasons of such conduct, Plaintiff is entitled to and therefore asserts a claim for punitive or exemplary damages in an amount sufficient to punish and deter Defendants and other like it for such conduct in the future pursuant to Texas Civil Practices & Remedies Code Section 41.001, et seq. and relevant case law.

## G. DAMAGES

42. Defendants' breach of duty proximately caused injuries and damages to the Plaintiffs, which resulted in the following damages:

   a. Physical pain in the past.

   b. Mental anguish in the past.

   c. Disfigurement in the past.

   d. Physical impairment in the past.

   e. Medical expenses in the past.

   f. Funeral and burial expenses.

   g. The loss of companionship, society, comfort, and love.

   h. The emotional pain and mental anguish suffered by the statutory wrongful death beneficiaries.

## H. JURY DEMAND

43. Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

## I. CONDITION PRECEDENT

44. Plaintiffs would show that he has complied with the provisions set forth in Section 74.051 of the Civil Practice and Remedies Code, in that Defendants have been notified of Plaintiff's claim(s) prior to the filing of this lawsuit.

## J. PRAYER

45. **WHEREFORE, PREMISES CONSIDERED**, Plaintiffs pray that Defendants be cited to appear and answer, and that on final trial, Plaintiffs have judgment against the Defendants for:

   a. Economic damages in excess of the minimal jurisdictional amount of this Court;

b. Non-economic damages in excess of the minimal jurisdictional amount of this Court;

c. Pre-judgment and post-judgment interest as allowed by law;

d. Costs of suit; and

e. All such other and further relief the Court deems appropriate.

Respectfully submitted,

**THE CLINESMITH FIRM**

BY:/s/ Curtis Clinesmith
Curtis Clinesmith
State Bar No. 24003401
Paul J. Downey
State Bar No. 24080659
325 N. St. Paul, Ste. 2050
Dallas, Texas 7520
972-677-7764 Telephone
972-390-0031 Facsimile
clinesmith@clinesmithfirm.com

Dawn M. Smith
State Bar No. 24079953
214-953-1900 Telephone
214-953-1901 Facsimile
dawn@clinesmithwootensmith.com

*ATTORNEYS FOR PLAINTIFF*

## REQUEST FOR DISCLOSURE

Under Texas Rule of Civil Procedure 194 and Texas Civil Practices and Remedies Code Section 74.351(s), Plaintiff requests that Defendants disclose, within 50 days of the service of this request, the information or material described in Rule 194.2.

## REQUESTS FOR PRODUCTION

Pursuant to Texas Rules of Civil Procedure 193 and 196, Plaintiff requests the voluntary production of the following documents and items in the possession, custody, or control of each Defendant within thirty (30) days after the date of service hereof. Said items are to be produced either electronically or for inspection and copying at the offices of THE CLINESMITH FIRM, 325 N. St. Paul St., 29th Floor, Dallas, Texas 75201.

*Please answer the following:*

1. Under Texas Rule of Civil Procedure 196 and Texas Civil Practices and Remedies Code Section 74.351(s), please produce all operating policies and procedures required by 40 TEX. ADMIN. CODE § 19.1920 and TEX. HEALTH & SAFETY CODE § 242.404, in effect January 1, 2017 to present.

2. Under Texas Rule of Civil Procedure 196 and Texas Civil Practices and Remedies Code Section 74.351(s), please produce all written policies which govern the nursing care and related medical or other services provided, required by 40 TEX. ADMIN. CODE § 19.1922 and TEX. HEALTH & SAFETY CODE § 242.404, in effect January 1, 2017 to present.

3. Under Texas Rule of Civil Procedure 196 and Texas Civil Practices and Remedies Code Section 74.351(s), please produce all policies and procedures established and implemented by the governing body, required by 40 TEX. ADMIN. CODE § 19.1902 and TEX. HEALTH & SAFETY CODE § 242.404, in effect January 1, 2017 to present.

4.  Under Texas Rule of Civil Procedure 196 and Texas Civil Practices and Remedies Code Section 74.351(s), please produce the policy to identity, assess, and develop strategies to control risk of injury to residents and nurses associated with the lifting, transferring, reposition, or moving of a resident required by 40 TEX. ADMIN. CODE § 19.1917(e) and TEX. HEALTH & SAFETY CODE § 242.404, in effect January 1, 2017 to present.

## INTERROGATORIES

Please take notice that pursuant to Rules 192 and 197 of the Texas Rules of Civil Procedure, Plaintiff serves the attached Interrogatories to be propounded to all named Defendants.

You are hereby instructed to answer the following Interrogatories separately, fully, in writing, and under oath as required by Rule 197.2(d) of the Texas Rules of Civil Procedure. The answers shall be served upon the undersigned counsel within 30 days after the service of these Interrogatories.

Your failure to make timely answers or objections may subject you to sanctions as provided in Rule 215 of the Texas Rules of Civil Procedure. Furthermore, demand is made for the supplementation of your answers to these interrogatories as required by Rule 193.5 of the Texas Rules of Civil Procedure.

1.  Under Texas Rule of Civil Procedure 197 and Texas Civil Practices and Remedies Code Section 74.351(s), please identify the director of nursing, the medical director and facility administrator for WEDGEWOOD, for the time period of March 1, 2020 to May 8, 2020.